SHAUN KHOJAYAN (#197690)
LAW OFFICES OF SHAUN KHOJAYAN
  & ASSOCIATES, P.L.C.
515 South Flower Street, 19th Floor
Los Angeles, CA 90071
Telephone: (310) 274-6111
Facsimile:  (310) 274-6211
Email: shaun@khojayan.com
Attorney for Defendant Jiang

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**(HONORABLE JOSEPHINE L. STATON)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>YONG JIANG,<br><br>　　　　Defendant. | Case No.:  24-cr-00187-JLS-1<br><br>DEFENDANT YONG JIANG'S SENTENCING MEMORANDUM<br><br><br>Sentencing Date: February 7, 2025<br>Time: 9:30 a.m. |

  Defendant Yong Jiang hereby files his Sentencing Memorandum. The defense agrees with the Probation Officer's guidelines calculations and sentencing recommendation of 2 years of probation, a $100 penalty assessment and $95,000 in restitution to the United States Postal Service.

**I. INTRODUCTION**

  Yong Jiang, 50 years old, is before the Court for sentencing on his Conspiracy to Defraud the United States 18 U.S.C. §371. This is his first serious offense and he regrets the actions that bring him before the court. He is very sorry and apologizes to the Court and the United States for his involvement in this offense. Mr. Jiang's family describes him as a caring, respectful and loving father and husband.  Mr. Jiang's wife and son remain extremely supportive during the

instant offense.

## II. DEFENDANT'S POSITION ON SENTENCING FACTORS

### A. THE NATURE OF THE OFFENSE

Mr. Jiang pled guilty to conspiring to defraud the United States in violation of 18 U.S.C. § 371, specifically using counterfeit shipping labels from between May 1, 2023 to May 24, 2023 resulting in a restitution amount of $95,000.

### B. THE DEFENDANT'S HISTORY AND CHARACTERISTICS

Yong Jiang, 50 years old was born in 1974, in China. His parents are Xue Guang Jiang and Nianxiang Tan. Mr. Jiang's father sadly passed away in 2021 after succumbing to the Covid virus. His mother resides in Hunan Province, China. Mr. Jiang has a younger brother, Jiang Huijang, who also resides in China.

Being raised in China during the 1970s was difficult for Mr. Jiang and his family. Food was scarce and rationed. His parents would work up to three shifts a day to feed the family. Mr. Jiang was forced to tend to his younger brother at home and before and after school while his parents were at work. Mr. Jiang would walk one hour to and from school every day. In fact, when he started working in addition to his schooling, he worked and paid for half of his brother's tuition. PSR at 11. Mr. Jiang learned early on that excelling in the school was the only way he and his brother could improve their life prospects.

After graduating from high school, in 1996, Mr. Jiang attended Central South University of China where he earned a Bachelor of Science degree in Mechanical Engineering. In 2005, Mr. Jiang attended Sun Yat Sen University and obtained a Master's Degree in Engineering and Business.

Mr. Jiang has had consistent employment from 2014 to the present. He was self employed at Quickfish Supply Chain LTD in ShenZhen City, China as the CEO. From 2009 to 2014, Mr. Jiang was employed at Light in the Box LTD in ShenZhen City, China.

Mr. Jiang married Mei Hna (Zhao) in 2016 in China. They have one child, Qingyang Jiang, age 19, who lives in Santa Cruz and attends school there.

Regrettably, Mr. Jiang became involved in this offense for which is ashamed. He apologizes to the United States and the Court. He will never be involved in a criminal offense again.

### C.   THE ADVISORY SENTENCING GUIDELINES

The Defense agrees with the Probation Office's sentencing calculations, including the zero-point offender reduction, variance recommended and sentencing recommendation.

In further support of Mr. Jiang's sentence, the defense highlights the following points:

Given that this Mr. Jiang's first offense, it is non-violent, and he served nearly 8 months in custody already, Congress contemplated a noncustodial sentence in such a circumstance. *See* 28 U.S.C. § 994(j) (charging the Commission with "insur[ing] that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense[.]"). *See also United States v. Paul*, 561 F.3d 970 (9th Cir. 2009) (court's within guideline sentence of 15 months unreasonably high in part because Paul was a first-time offender with no criminal record whatsoever); *United States v. Autery* 555 F.3d 864 (9th Cir. 2009) (court's variance to probation from an advisory guidelines 41-51 months, not unreasonable in part because defendant's first conviction and Criminal History I "did not fully account or his complete lack of criminal history.").

The likelihood that a defendant "will engage in future criminal conduct [is] a central factor that district courts must assess when imposing sentence." *Pepper v. United States*, 131 S. Ct. 1229, 1242 (2011). Here, there is a very low risk of

recidivism given the harsh lesson Mr. Jiang has already learned, especially in light of his upbringing. *See, e.g.*, *United States v. Smith*, 275 F. App'x 184, 187 (4th Cir. 2008) (affirming 54 months downward variance in part because of low risk of recidivism); *United States v. Nellum*, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (in drug distribution case by a 57 year old defendant, a 60 months reduction in sentence based on lower recidivism rates under § 3553(a)(2)).

Per the Sentencing Commission's studies, Mr. Jiang's education, work history, age and no criminal history also support that he is a low to no risk of reoffending. *See Recidivism and the 'First Offender'* (May 2024) available at https://www.ussc.gov/research/research-publications/recidivism-and-first-offender ("The analysis [of empirical data on re-offending] delineates recidivism risk for offenders with minimal prior criminal history and shows that the risk is lowest for offenders with the least experience in the criminal justice system. Offenders with zero criminal history points have lower recidivism rates than offenders with one or more criminal history points. Even among offenders with zero criminal history points, offenders who have never been arrested have the lowest recidivism risk of all."). "Recidivism rates decline relatively consistently as age increases." *See* U.S.S.C., *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 12 (found at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_ Recidivism _Criminal_History.pdf).

### III.   CONCLUSION

Based on the foregoing, the defense agrees with the Probation Officer's recommendation of a sentence of two years probation, a $100 penalty assessment and $95,000 in restitution.

Respectfully submitted,

Dated: January 24, 2025         <u>s/ Shaun Khojayan</u>
                                Attorney for Defendant Yong Jiang